THE STATE ex rel. MARGARET B. CROUSE and JOHN F. BULFIN v. EDWIN W. MILLS, Judge of Probate Court, and JOSEPH B. GREENSFELDER.

In Banc, December 17, 1910.

1. **CONSTITUTIONALITY OF STATUTE: Amended by Invalid Act: Insane Persons: Jurisdiction of Probate Court.** The decision in Redmond v. Railroad, 225 Mo. 731, holding that "the act of the General Assembly entitled, 'An act to amend section 3650, chapter 39, of the Revised Statutes of 1899, entitled Insane Persons,' approved March 25, 1903, is unconstitutional", was meant, as is shown by the context, to declare void only the proviso, which alone constituted the amendment of 1903, and which declared that the probate court shall have no jurisdiction to inquire into the insanity of any person who is the owner of no property. But even if it was meant to declare invalid the entire Act of 1903, that did not invalidate Sec. 3650, R. S. 1899, which it purported to amend; for that act contained no repealing clause, and the rule is that an unconstitutional enactment will not repeal a former valid law by implication. Section 3650 is valid, and probate courts

have jurisdiction under it to hold and determine lunacy inquiries.

2. **PROHIBITION: Jurisdiction of Person: Power of Court to Decide.** The probate court has jurisdiction over the subject-matter of a lunacy inquiry; and where its jurisdiction over the person of the one alleged to be insane, is dependent upon that one's being present within its territorial jurisdiction, a writ of prohibition will not lie to prevent it from investigating the necessary facts to determine its own jurisdiction over the person; nor can prohibition be granted to prevent the entry of the court's judgment, whether it be right or wrong. Where the jurisdiction depends upon facts, the probate court has a right to determine its jurisdiction from the facts before it, and prohibition will not lie unless the facts are admitted or are not disputed.

3. ————: ————: ————: **Found to Exist.** It is to be presumed that the probate court inquired into its own jurisdiction and passed upon the truth or falsity of the affidavit alleging the insane person was a resident of the county; and having entered judgment adjudging her to be insane, a writ of prohibition will not lie to root up that judgment or declare it invalid.

4. ————: ————: ————: **Motion to Set Aside: Res Adjudicata.** Where the relator, after the probate court had entered judgment finding her to be insane and finding her to be in the county within the meaning of the laws, filed a motion to set aside that judgment on the ground that the court had no jurisdiction of her person, in that she did not reside in the county; and that motion was tried upon evidence and overruled; and from that ruling an appeal was taken to the circuit court, and from it to the Court of Appeals, and it was held, by each, that no appeal would lie from the probate court in a lunacy inquiry case, the judgment of the probate court must stand in full force and is final on the point, whether the holding of the Court of Appeals was correct or erroneous.

5. ————: ————: ————: **Admission in Return.** The return of the probate judge to the writ of prohibition, avers that relator's husband was for one whole year a resident of another State, and that during that year the proceedings were had in the probate court by which she was adjudged to be insane and a guardian appointed; and it would seem she was not in the county, within the meaning of the law. *Held*, that such an admission by the judge in his return, will not invalidate the solemn judgment of the probate court theretofore rendered, finding, in effect, that it had jurisdiction over her person and estate, and will not justify a permanent writ of prohibition.

6. ————: Judgment Already Entered. Prohibition will not lie to undo a final judgment already entered long before the

writ was applied for, unless such judgment is void upon its face. It simply stops the doing of that which should not be done.

7. ———: ———: **Lunacy Inquiry: Incorrect Given Name.** Where relator was married to Crouse under the name of Maggie Jessie Bulfin and she was personally served in a proceeding charging Jessie B. Crouse to be insane, and appeared at the hearing, the slight discrepancy in the given name does not affect the validity of the judgment.

8. ———: ———: ———: **Facts of Case.** Relator was married in 1882, and she and her husband resided in the city of St. Louis up to January, 1907, and while residing there she was treated for insanity from the year 1896. In 1905 her husband caused her to be confined in St. Vincent's Asylum in St. Louis county. From January, 1907, to March, 1908, he resided in Pennsylvania, and never did reside in St. Louis county, nor did she at any time own any property in said county. Her mother died in 1904, leaving her an estate worth $2000, in the city of St. Louis, and in August, 1907, while she was an inmate of said asylum, proceedings were instituted in the probate court of St. Louis county to have her declared insane, and a guardian appointed. She was served personally with process, a guardian was appointed to represent her at the inquiry, she was adjudged insane, and a guardian appointed to manage her estate, and that judgment was not appealed from. Later a motion was filed to set that judgment aside, on the ground that she was not in the county within the meaning of the laws, and because, therefore, the probate court had no jurisdiction over her person; evidence was heard in support of the motion, it was overruled, and an appeal was taken to the circuit court, and from it to the Court of Appeals, and in each it was held she was not entitled to an appeal. *Held*, that the probate court had jurisdiction over the subject-matter, and is presumed to have investigated the facts and determined it had jurisdiction over her person, and its judgment cannot be reached by a writ of prohibition, however erroneous may have been the various rulings, since the judgment is not void on its face.

9. **JURISDICTION: Insane Non-Resident: Actually in County.** *Held*, by VALLIANT, J., in separate concurring opinion, in which a majority concur, that, as relator's husband was a resident of Pennsylvania during the time she was confined in the asylum in St. Louis county and at the time the proceedings were instituted in that county and she was adjudged a lunatic, her legal residence was at that time in Pennsylvania and she was a non-resident, and therefore the probate court of that county, under the statute, had jurisdiction of the case.

Prohibition.

PEREMPTORY WRIT REFUSED.

*John Lally* for relators.

*F. W. Imseipen* and *Bernard Greensfelder* for respondents.

GRAVES, J.—By our writ of prohibition the relators seek to prohibit the defendant Edwin W. Mills, judge of the probate court, from further entertaining jurisdiction of the person and estate of relator Margaret B. Crouse. Upon application being filed, a preliminary rule was entered requiring respondents to show cause, and they in due time made their return. Relators then move for judgment upon the pleadings.

The petition and return are both long, but the apparent facts admitted by the pleadings are as follows:

In 1882 the relator Margaret B. Crouse was married to one William C. Crouse under the name Maggie Jessie Bulfin. She was the daughter of Jessie Bulfin, now deceased, and is a sister of her co-relator, John F. Bulfin. The marriage was in the city of St. Louis and whilst they were so living the relator, from the year 1896, was being treated for insanity. In the year 1905 her husband caused her to be confined in St. Vincent's Asylum in St. Louis County, for treatment. Up to January, 1907, the residence of the husband, W. C. Crouse, was in St. Louis. From January, 1907, to March, 1908, his residence was in Philadelphia, Pennsylvania. The mother of the relators died in 1904, leaving some property in the city of St. Louis, in which each relator has an undivided one-third interest. William C. Crouse in fact never lived in St. Louis county, nor did his wife ever own any property or estate in such county.

August 7, 1907, one C. H. Kern, charged to have been counsel for the husband and acting under his direction, filed an affidavit in the probate court of St. Louis county, charging "that one Jessie B. Crouse, in

the county of St. Louis, aforesaid, is a person of unsound mind and incapable of managing her affairs, and prays that an inquiry thereinto be had, according to the statutes in such case made and provided. Informant further states that said Jessie B. Crouse is the owner of property of the value of about $2000." Upon this information the probate court caused a notice to be issued in the name of Jessie B. Crouse, which notice was personally served upon relator in the asylum aforesaid by the sheriff of the county. On September 16, 1907, a jury in the said probate court returned a verdict in this language: "We, the jury, find the respondent Jessie B. Crouse to be of unsound mind and incapable of managing her affairs."

Upon the return of this verdict the said court entered a judgment in accordance with the verdict aforesaid and appointed the respondent Joseph B. Greensfelder "as guardian of the person and estate of the said Jessie B. Crouse." Greensfelder qualified and gave the bond required by the court. Later in October, 1907, Jessie B. Crouse, by John Lally, her attorney, filed a motion asking, for certain named reasons, that the judgment and order of the court aforesaid be set aside. This motion was overruled and an appeal was taken to the circuit court of St. Louis county, where by its judgment that court dismissed the said appeal. From such judgment an appeal was taken to the St. Louis Court of Appeals, and the judgment of the circuit court was affirmed. [In the Matter of Jessie B. Crouse, *non compos,* 140 Mo. App. 545.]

Later it appears that, acting under the direction of the probate court of St. Louis county, the said respondent, Greensfelder, instituted a partition suit in the city of St. Louis to divide the property left to relator Margaret B. Crouse and her brother and sister by the mother. All court records and pleadings both in the probate and circuit courts are attached to either the petition or the return in the case at bar, but further

details may well be omitted. This sufficiently states the case for a disposition of the points made by the respective parties.

I. The constitutionality of section 3650, Revised Statutes 1899, as amended in 1903, is challenged. Prior to the amendment the statute read as it now reads with the words of the proviso left out.

It now reads: "If information in writing be given to the probate court that any person in its county is an idiot, lunatic, or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: *Provided,* That the probate court shall not have jurisdiction to inquire into the insanity of any person who is the owner of no property." [Laws 1903, p. 200.] This amended statute was the act of the General Assembly in 1903 as above indicated.

In Redmond v. Railroad, 225 Mo. 731, we said: "We hold that the act of the General Assembly entitled, 'An Act to amend section 3650, chapter 39, of the Revised Statutes of Missouri, 1899, entitled Insane Persons,' approved March 25, 1903, is unconstitutional."

This language is broad, but when it is taken with the context our meaning is clear. What was really held is that the *proviso* clause was violative of constitutional provisions and that such clause was void.

But even if it be conceded, which we do not concede, that the void proviso rendered the whole act of 1903 void, yet we would have a law empowering probate courts to hold inquiries as to lunacy. The old section 3650 would be the law. This act of 1903 contained no repealing clause, but even had it contained such clause, there would be no difference. The rule, well buttressed by authority, is thus stated in 36 Cyc. 1098: "An act, unconstitutional in itself, may contain a valid clause repealing another act. The rule is well settled,

however, that an unconstitutional enactment will not repeal a former valid law by mere implication. And the rule is the same where the subsequent unconstitutional act declares the repeal of all acts or parts of acts inconsistent therewith, and it is apparent that the repealing statute is to be substituted for the one repealed; there being nothing that can conflict with a void statute. So where an act expressly repealing another act and providing a substitute therefor is found to be invalid, the repealing clause must also be held to be invalid, unless it shall appear that the Legislature would have passed the repealing clause even if it had not provided a substitute for the act repealed." The author cites several Missouri cases, but does not mention the later case of City of Lexington ex rel. v. Lafayette County Bank, 165 Mo. 1. c. 681, wherein the matter is discussed.

In the case at bar the amendatory act in fact reenacted all of the old section 3650, and the only purpose of the proviso was to limit the law. This limitation we have declared void, so, viewing the matter from either standpoint, the old section 3650 was in force to give authority to the probate court to act upon the subject-matter, and the only other question necessary to complete its jurisdiction was jurisdiction over the person. This we take next.

II. There being a statute giving the probate court jurisdiction over the subject-matter, the next question is as to its jurisdiction over the person, at the time the judgment of lunacy was entered. It is quite evident that the relator was personally served by the sheriff in St. Louis county. The application charged relator's residence to be in St. Louis county and she was found and personally served therein. She did not appear, but the court appointed an attorney to represent her at such hearing. She was adjudged insane and her guardian appointed. She later appears by attorney in court and moves to set aside the judgment of lunacy and the appointment of guardian. This motion raises

the point of her residence and the want of jurisdiction in the court as to her person. The record recites that this motion was threshed out upon evidence and argument and overruled. Is the judgment of lunacy entered by the probate court of St. Louis county a valid one, and if so does prohibition lie?

Where the jurisdiction of the probate court is dependent upon the fact of the person being within the territorial jurisdiction of the court, a writ of prohibition will not lie to prevent the probate court from investigating the necessary facts to determine its own jurisdiction, nor could prohibition be granted to prevent an entry of the court's judgment whether that judgment be right or wrong, as to the jurisdiction over the person. In other words, if the law determines the right of a court to entertain or not entertain jurisdiction of a case, then prohibition will lie, but if jurisdiction is contingent upon facts, unless such facts be admitted and not disputed, the lower court has the right to determine its jurisdiction from the facts before it. To my mind there is no clearer statement of the law upon this point than that made by GILL, J., in Coleman v. Dalton, 71 Mo. App. l. c. 24. The writer, as counsel, lost that case, but appreciates the force of the opinion on the question of jurisdiction of probate courts.

Judge GILL says: "We might stop here, and for the reason already assigned deny this writ. But there is another ground, equally satisfactory, for refusing prohibition. It is a well-settled principle that 'if the existence or non-existence of jurisdiction depends on contested facts which the inferior tribunal is competent to inquire into and determine, prohibition will not be granted.' [19 Am. and Eng. Ency. Law, p. 271, and cases cited; State ex rel. v. Seay, 23 Mo. App. 623; Hansford v. Hansford, 34 Mo. App. 262; Howland v. Railroad, 134 Mo. 474, 479.] 'To determine, in the first instance, its own jurisdiction, as far as the same rests upon contested facts, is a legitimate exercise of

the judicial powers of any tribunal, and though it may err in such determination, its so doing is not a usurpation of judicial authority, but error for which the proper remedy of the party aggrieved is by appeal.' [State ex rel. v. Seay, supra.]  'If the inferior court has jurisdiction of the subject-matter in a controversy, a mistaken exercise of that jurisdiction or of its acknowledged powers, will not justify a resort to the extraordinary remedy by prohibition.  It is never allowed to usurp the functions of a writ of error or *certiorari,* and can never be employed as a process for the correction of errors of inferior tribunals.'  [State ex rel. v. Burckhartt, 87 Mo. 533.]  There is no doubt as to the jurisdiction of the probate court of Bates county over the subject-matter of the action, that is, over *that class of cases.*  And being so possessed, the defendant, as judge of said court, had power and authority to hear and determine all the issues presented, whether relating to the residence of the alleged insane party or other issues belonging to the case.  It was as much the duty of said probate judge to hear and decide the issue of domicile as any other issue within the limits of that controversy, and his judgment was as final and conclusive upon that question as upon any other.  [State ex rel. v. Smith, 104 Mo. 419, 424.]''

So as to the original judgment of lunacy, it is to be presumed that the probate court inquired into its own jurisdiction and passed upon the truth or falsity of the allegation in the affidavit that the relator was of the county of St. Louis.  That judgment has long since been entered, and a writ of prohibition could not go as to that action of the court in the matter.  Prohibition stops the court from acting, but does not undo what has been done by the court.

But there is yet another matter which to our mind settles this point of jurisdiction over the person.  The relator, Mrs. Crouse, after the entry of judgment filed her motion to vacate and set aside the judgment entered,

on the ground, among others, "that the court did not have jurisdiction over her person and estate at the time said judgment and appointment was made and entered, in that she was not in the county of St. Louis, within the meaning of the laws of Missouri relating to insane persons, at or prior to the time the court caused the facts to be inquired into." The probate record filed here as a part of respondents' return in this case shows that this motion was tried upon evidence, and for the second time the probate court passed upon the fact of its jurisdiction of the person. From this judgment an appeal was taken first to the circuit court, and then to the St. Louis Court of Appeals, with the result as set forth in our statement. As stated elsewhere, these courts held that an appeal would not lie from the probate court in this character of a case. Whether this ruling is correct or not we will not discuss, because the matter is finally determined by the St. Louis Court of Appeals, even though we might think that judgment erroneous. The judgment stands in full force and under this judgment there has been a finding as to the facts necessary to determine the court's own jurisdiction. That finding may be erroneous, but it has passed beyond the realm of review. It is final and is not subject to attack in this proceeding.

We conclude, therefore, that the judgment of the probate court is final in this matter, as to the status of the relator Mrs. Crouse and her estate.

III. The return avers that from January, 1907, to January, 1908, the husband of relator Mrs. Crouse was a resident of another State. The probate proceedings were had during that time. As before stated, it would seem that Mrs. Crouse was not in law in St. Louis county at the time of the judgment of the probate court or at the time she was served with process. But this matter we do not decide for the reason that this admission in the return cannot destroy the solemn judgment of the probate court. It would be a very

dangerous precedent for us to say that a court can enter its solemn judgment, but the judge thereof by an admission in a collateral proceeding can destroy the force and effect of such judgment. Relators' contention in this regard cannot therefore be sustained. Nor can the slight discrepancy in the given name, in the notice to relator, be questioned, for the reason that she was served in person, and for the further reason that she afterward actually appeared.

IV. There is another matter, which of itself determines the present case. First the application is not timely, and, secondly, if the judgment of the probate court is valid, then prohibition will not stop proceedings thereunder. That the two judgments of the probate court (the first upon the merits and the second upon the motion to vacate the first) had been entered long before the writ in this case was sued out is an admitted fact in the record. The probate court of St. Louis county had therefore already acted. As to these matters prohibition will not lie because the court has acted. Prohibition does not undo that which has been done, but stops the doing of that which should not be done.

If the judgment of the probate court of St. Louis county was void upon its face, and the parties had no other available remedy, then prohibition would lie to stop the court from further proceeding under such judgment. In 32 Cyc. 621, the rule is thus stated: "The enforcement of a judgment, where there is a remedy by appeal or otherwise, or the enforcement of an execution issued thereon where there is a remedy by motion to quash, will not be restrained by prohibition. But if there is no other remedy available to the party aggrieved, prohibition will lie to restrain the enforcement of a void decree or judgment."

But we have concluded that the judgment of the probate court of St. Louis county is not void, and therefore prohibition will not lie to prohibit proceedings thereunder. These conclusions render the consid-

eration of other questions discussed in the brief unnecessary. The preliminary rule in prohibition is therefore quashed and permanent writ refused.

*Gantt, Lamm* and *Kennish, JJ.,* concur; *Woodson, J.,* concurs in result; *Valliant, J.,* concurs in separate opinion; *Burgess, C. J.,* absent.

## SEPARATE CONCURRING OPINION.

VALLIANT, J.—I concur in all the opinion of my learned brother GRAVES and I wish to say further that in my opinion under the facts that appear in this record the probate court of St. Louis county had jurisdiction of the case. In August, 1907, when the proceeding to have Mrs. Crouse declared insane was instituted, and in September following when she was so adjudged, she was in fact in St. Louis county, confined in the asylum, and during the period covering those dates her husband was not a resident of this State, he resided in Pennsylvania. Therefore during that period Mrs. Crouse's legal residence was in Pennsylvania, she was a nonresident of this State, but was personally present in St. Louis county and for the time being abiding there. The statute does not in terms require that the insane person should be a resident of the county; but the language is: "If information in writing be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind," etc., the probate court shall have jurisdiction. I am not now speaking of an insane pauper that would come under the jurisdiction of the county court under another statute, but of a person like Mrs. Crouse who was not a pauper. If such a person of unsound mind had a legal residence in this State in another county doubtless the probate court of the county of his residence would have jurisdiction. But in the case of a non-resident, if the probate court of the county where the person in fact is, has not authority to take care of him, he will wander where he

listeth without care for himself or care for the com· munity in which he is loose.

*Lamm* and *Kennish, JJ.,* concur; *Woodson, J.,* concurs in all except that as to the opinion of Judge GRAVES he concurs in the result only.