MARY B. BAKER, APPELLANT, v. ESTATE OF MARTHA B. SMITH, RESPONDENT.*

Kansas City Court of Appeals. May 20, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, Section 409, p. 574, n. 57; 4CJ, Section 2693, p. 754, n. 83; Section 2853, p. 878, n. 82; Insane Persons, 32CJ, Section 167, p. 629, n. 52; Judgments, 34CJ, Section 605, p. 393, n. 1; p. 394, n. 2; Section 614, p. 397, n. 46; Section 619, p. 398, n. 70; Section 851, p. 552, n. 44.

*German, Hull & German* and *Shultz & Owen* for appellant.

*Groves & Watkins* and *Fred M. Wagner* for respondent.

BARNETT, C.—This is an appeal from an order of the circuit court of Buchanan county, Missouri, whereby the trial court sustained a motion to dismiss the appellant's appeal from an order of the probate court of that county. The order of the probate court overruled

appellant's motion to dismiss the proceedings in the matter of Martha B. Smith, a person of unsound mind.

Clark H. Smith and Martha B. Baker were married in Los Angeles, California, on November 1, 1899. A few months after the marriage they established their home in Kansas City, Missouri. In 1917 Mrs. Smith was stricken with a malady which resulted in the loss of her reason. She was placed by her husband in various sanitariums and finally in 1920, she was placed in State Asylum No. 2 for the insane in St. Joseph, Missouri, where she has ever since been kept as a patient. During the time that Mrs. Smith has been a patient in the asylum at St. Joseph, Clark H. Smith has maintained his residence in Kansas City, Missouri. On August 13, 1923, the husband filed in the probate court of Buchanan county a verified information in which it was alleged that Martha B. Smith is a resident of Buchanan county, is possessed of property, and is a person of unsound mind and incapable of managing her own affairs. On the day that the information was filed the probate court made an order that notice issue to Martha B. Smith as required by law, that the cause be taken up for hearing on the 18th day of August, 1923, and that a jury be summoned to hear the cause. The notice was issued and the sheriff's return recited that it was served on the 13th day of August, 1923, by delivering a true copy to Martha B. Smith and by delivering a true copy to Dr. Thompson, superintendent of State Hospital No. 2. On the 16th day of August, 1923, the clerk of probate issued a jury summons, and the sheriff's return thereon appears as follows:

"In obedience to this command, I have executed this *venire facias* by summoning the following named persons as jurors for the within mentioned trial, to-wit:

"1. Wm. J. Dolan, 2. Chas. Lodholz, Fred Sanborn, 3. Ben Grimes, 4. R. H. Story, 5. Sam Hess, 6. Joe Spear, 7. Chas. Levi, 8. P. M. Austin, 9. Joe Wolff, 10. C. B. Griffith, J. J. Hanley, 11. O. L. Tarvin, J. A. Kabka, 12. P. H. Oatman, J. H. Diddy, Avery Karns, W. A. Edson. Fee, $————.

"W. H. KUEKER,
"Sheriff of Buchanan County, Mo.
"By H. H. DARBELL, Deputy."

A pencil line had been run through the names of Fred Sanborn, J. J. Hanley, and J. A. Kabka, on the sheriff's return at the time of the trial in the circuit court, and numerals appeared before twelve names.

On August 18, 1923, the probate court again made an order that a jury summons issue to the sheriff of Buchanan county, Missouri, for eighteen jurors, and on that day the court entered of record an order which is as follows:

"Now here comes the sheriff of Buchanan county, Missouri, and returns notice to Martha B. Smith, showing proper service.

"Now here it is ordered by the court that Homer King be and is hereby appointed counsel for said Martha B. Smith during the hearing on the information as to her alleged insanity.

"Now here the matter of the inquiry as to the alleged insanity of Martha B. Smith coming on to be heard, comes now the informant in person and Homer King appearing as (page 133) counsel for Martha B. Smith and comes also a jury duly summoned according to law, to-wit: William J. Dolan, Charles Lodholz, Ben Grimes, R. H. Story, Sam Hess, Joe Spear, Charles Levi, P. M. Austin, Joe Wolff, C. B. Griffith, O. L. Tarvin, and P. H. Oatman, twelve good and lawful men, who are duly sworn to try said cause, and the matter being submitted and the jury having heard all of the evidence touching the condition of mind of the said Martha B. Smith, retired to consider their verdict and, after due deliberation, returned into the court the following verdict: 'We, the jury in the above-entitled cause, find that Martha B. Smith is a person of unsound mind and incapable of managing her own affairs.

" '(Signed) JOSEPH SPEAR, Foreman.'

"It is therefore adjudged by the court that Martha B. Smith is a person of unsound mind and incapable of managing her own affairs, and it is ordered and adjudged that Clark H. Smith be and he is hereby appointed guardian of the said Martha B. Smith, insane, subject to giving bond unto the State of Missouri, in the sum of $6000, conditioned as required by law."

Thereafter, Clark H. Smith qualified, filed an inventory, and made annual settlements. In 1927 the court made an order by which the husband was removed as guardian on the ground that he was a nonresident of the State of Missouri and had been divorced from his ward. The court then appointed one John J. Downey of St. Joseph, Missouri, as the husband's successor, who in due time qualified and who is now the acting guardian of Martha B. Smith.

Plaintiff filed a motion in the probate court of Buchanan county which is as follows:

"Comes now Mary B. Baker in person as the sister of said Martha B. Smith and as her guardian and curatrix under appointment of the probate court of Jackson county, Missouri, sitting at Kansas City, and alleges that all of the proceedings herein are void and of no effect because this court had no jurisdiction to inquire into the sanity of said Martha B. Smith and had no jurisdiction of her person or estate and no jurisdiction to appoint a guardian herein.

"Wherefore said Mary B. Baker prays the court to dismiss this proceeding and to take such other and further action as may be necessary or advisable in the premises."

Thereafter and on January 14, 1928, a hearing was had on this motion and the probate court entered of record an order in which

it was recited that when the information alleging the insanity of Martha B. Smith was filed, and when Martha B. Smith was served with notice by the sheriff, and when the information was tried before a jury, the said Martha B. Smith was in the county of Buchanan and was served with notice by the sheriff, and that the court obtained jurisdiction of the subject-matter in the case and full jurisdiction over Martha B. Smith; that said Mary B. Baker who filed the motion had no interest in the estate of Martha B. Smith and therefore had no right to maintain the motion and that the motion was overruled. From this order Mary B. Baker appealed and John J. Downey, as guardian, filed in the circuit court a motion to dismiss the appeal, and as grounds therefor alleged as follows:

"1. That the probate court of Buchanan county, Missouri, acquired and now has exclusive jurisdiction of the subject-matter, and of the person of the said Martha B. Smith, insane.

"2. That this court has no jurisdiction to hear and determine said cause *de novo*.

"3. That no appeal lies from the judgment of the probate court in this case.

"4. That appellant, Mary B. Baker, is not such a person as is designated by the statute as having the right of appeal in such case."

Said motion was set down for hearing and when the motion came on to be heard the circuit judge made the following statement:

"Let the record show that the evidence heard in this case applies with what bearing it may have upon either the motion or the merits of the case."

Upon the hearing in the circuit court it was shown that Mary B. Baker who filed the motion in the probate court and who appealed to the circuit court was the sister of Martha B. Smith, a person of unsound mind; that she had been appointed guardian of the person and estate of Martha B. Smith by the probate court of Jackson county, shortly before she filed the motion in the probate court of Buchanan county. The defendant John J. Downey introduced evidence from which it appears without contradiction that Martha B. Smith's husband was a resident of Jackson county at the time she was incarcerated in the asylum in Buchanan county; that she was insane at the time she was placed in that asylum and has been of unsound mind ever since. The husband himself was put upon the stand and testified that he was then and ever since has been a resident of Jackson county, and he testified that he had signed the information wherein it was alleged that his wife was a resident of Buchanan county, because he was advised by counsel that this was necessary in order to secure the inquisition upon the question of his wife's sanity. At the close of the evidence the court entered of record an order which is as follows:

"Now on the 28th day of July, 1928, being the 66th day of the May, 1928, term of this court, the above-entitled cause came on for decision, having heretofore been submitted to the court on the pleadings filed and evidence adduced, and after due consideration the court finds from the evidence that the probate court of Buchanan county, Missouri, obtained jurisdiction of the person and of the estate of Martha B. Smith, insane, and had full jurisdiction of the subject-matter to adjudge the said Martha B. Smith, insane, by the judgment made and entered by said probate court on the 13th day of August, 1923; that the court finds that Martha B. Smith was in Buchanan county, Missouri, at the time the information was filed against her, charging her with being a person of unsound mind and incapable of managing her own affairs; that notice was legally and properly served upon her in said Buchanan county, Missouri, by the sheriff of said county, and that a trial by jury was properly held, and that the probate court of Buchanan county, Missouri, had full jurisdiction to declare her insane and appoint a guardian of her person and of her estate.

"The court further finds that at the time said information was filed in the probate court of Buchanan county, Missouri, on the 13th day of August, 1923, no other proceeding was filed or pending in any court having jurisdiction of the question of the insanity of said Martha B. Smith, and no other action or proceeding was pending in any other court for the purpose of appointing a guardian for the estate of Martha B. Smith.

"It is therefore considered, ordered and adjudged by the court that the proceeding of Mary B. Baker filed in the probate court of Buchanan county, Missouri, and taken by appeal to this court, be and the same is now here dismissed.

"And it is further ordered, adjudged and decreed that John J. Downey is the duly appointed, qualified and acting guardian of the person and estate of the said Martha B. Smith, insane, and that the action of the probate court of Buchanan, county, Missouri, in the appointment of John J. Downey as guardian of the person and estate of said Martha B. Smith, insane, be, and the same is hereby affirmed.

"It is further ordered that the costs of this case, taxed at $————, be paid by the said Mary B. Baker and that execution shall issue therefor."

A motion for new trial was filed and overruled and Mary B. Baker has appealed.

## Opinion.

Section 2436, Revised Statutes 1919, provides that the circuit courts in the respective counties in which they may be held shall have power and jurisdiction as follows: ". . . fourth-appellate jurisdiction from the judgments and orders of county courts, probate courts, and justices of the peace, in all cases not expressly prohibited by law, and shall possess a superintending control over them and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind."

The Supreme Court has held that under this statute there is a right of appeal from any final judgment or order made by a probate court, and that it matters not whether such final judgment or order is in the estate of an insane person or in some other branch of probate jurisdiction. In re Guardianship of Angela McMenamy, 307 Mo. 98. It is therefore only necessary to determine whether or not the order of the probate court was a final order. The fact that it finally disposed of the motion is not conclusive. Sustaining or overruling a motion for continuance finally disposes of the motion, and yet such an order is not a final order. We think this was a final order. The petition alleged that the probate court did not have jurisdiction over any of the insanity proceedings, and as reason therefor, alleged facts that did not appear upon the face of the record. Such a motion serves the purpose of the common-law writ of error *coram nobis*. Such a motion is an independent proceeding and serves somewhat the same purpose in a court of law that is served by a bill in equity to set aside a judgment. The order of the court thereon is a final judgment.

The rule is thus stated in 2 R. C. L., p. 310: "The judgment of reversal of the former judgment is itself final, as distinguished from interlocutory, and is itself reviewable by a higher court as such." Of course, a judgment of affirmance of the former judgment is of the same character.

In this State a writ of error *coram nobis* is obsolete. We know of no reason why a Missouri court could not issue the writ, but in actual practice a motion to set aside a judgment which alleges grounds for a writ of error *coram nobis* is tried upon a mere notice to the opposing party. The writ is not actually issued, but all of the relief which at common law could be obtained under the writ may be obtained in this State upon a trial of the motion. It is therefore customary to refer to such a motion as a writ of error *coram nobis*. The proceeding under the writ or the motion is at law and not in equity. The writ of error *coram nobis* and the writ of error *coram vobis* lie for the correction of errors of fact. It is called a writ of error *coram nobis* in King's Bench because the record and proceedings are stated in the writ to remain "before us." It was a fiction of old English law that the king was supposed to preside in person in that court.

In the Court of Common Pleas, where the king is not supposed to preside, the writ is called a writ of error *coram vobis*, because the record and proceedings are stated in the record to remain "before you," meaning the king's justices. [1 Arch Prac. 234, 5; 2 Saund. 101A; 2 Dunlap's Prac. 1125; Fugate v. State, 85 Miss. 94; Teller v. Wetherell, 6 Mich. 49.] The difference referred only to the form appropriate to each court, neither of which exists in the United States; and as a result there is no difference between a writ of error *coram nobis* and a writ of error *coram vobis* in this country. [U. S. v. Plumer, Fed. Cas., No. 16056.]

The only object in examining into the origin of the writ is to demonstrate that the proceedings thereunder are at law and not in equity. We therefore conclude that upon the trial of such a motion the finding of fact of the trial judge, if it is supported by any substantial evidence, is conclusive in the appellate court. The writ lies when a court has proceeded in a case as though a fact which was material to its right to proceed existed when it did not exist, and when the absence of the fact assumed to exist entirely defeated the power of the court to reach a valid result in its proceedings. It does not lie to review errors arising on facts submitted to a jury, referee, or to the court sitting as a jury. [Cross v. Gould, 131 Mo. App. 585; Simms v. Thompson, 236 S. W. 876.] If the existence of the fact which is necessary to the jurisdiction of the court has been investigated and determined, then the matter is *res judicata* and a new trial upon that issue may not be obtained by the writ of error *coram nobis* or a motion in the nature of such a writ. It therefore appears that no relief may be had in this proceeding if the probate court of Buchanan county tried the question of the residence of Martha B. Smith before finding and adjudicating her to be a person of unsound mind, and even if the probate court failed to try that issue but merely assumed it to exist, yet no relief may be had upon this appeal if the circuit court upon a trial of the motion to set aside the judgment made a finding, supported by any substantial evidence, that Martha B. Smith was a resident of Buchanan county at the time that the information was filed against her and a trial was had upon the question of her sanity.

In this case the record of the probate court shows that the information alleged that Martha B. Smith was a resident of Buchanan county, but that that question was not decided by the jury. Nor does the record of the probate court import that any finding of fact was made by the judge. It is true that upon a collateral attack the courts will indulge the presumption that the probate court did what was necessary in order to exercise its jurisdiction, even though the record be silent as to some material matters. But if such a presumption was indulged upon the trial of a motion in the nature of a writ

of error *coram nobis* it would result in an entire abolition of all such proceedings. The writ will not lie to correct errors upon the face of the record, nor to establish the existence of facts inconsistent with the recitals of the record. It will only permit a showing that certain necessary facts were assumed but not determined.

In this case respondent voluntarily introduced evidence to the effect that the husband was a resident of Jackson county at the time that his wife was incarcerated in the asylum in Buchanan county and that he was still a resident of Jackson county when the inquisition into his wife's sanity was instituted and when she was adjudicated a person of unsound mind. There was no attempt to prove that the question of the wife's residence was actually tried in the probate court. It has been held in this State that parol evidence is admissible to show that matters as to which the record is silent were not actually adjudicated. [Nelson v. Barnett, 123 Mo. 564, and authorities there cited.]

It is the general rule in this State that a trial court may not be restrained by a writ of prohibition from proceeding in an action upon the ground that a certain fact necessary to its jurisdiction does not exist. The reason is that the trial court has a right to take evidence to determine whether or not the fact exists. Yet this court has held that if prohibition is sought upon such grounds and the respondent admits that the necessary jurisdictional fact does not exist, then prohibition will lie. [State ex rel. v. Duncan, 195 Mo. App. 541, l. c. 546, 547.]

We have therefore concluded that the burden was upon the appellant to establish the fact in the trial court, not only that Martha B. Smith was not a resident of Buchanan county at the time she was adjudicated to be of unsound mind, but that the probate court of Buchanan county did not try that fact and that this showing might have been made by the introduction of oral evidence as there is nothing in the judgment of the probate court to indicate that that question was in fact tried. However, since the respondent introduced affirmative and uncontradicted evidence that Martha B. Smith was not a resident of Buchanan county, this was tantamount to a claim that the probate court had not adjudicated otherwise, but had exercised its jurisdiction upon the theory that such residence was not necessary.

The probate court held that the appellant had no interest in the estate of Martha B. Smith and therefore had no right to maintain the motion. The rule is that the writ of error *coram nobis* will issue only at the instance of a party to the record, or of one in privity with him, or of a person injured by the judgment who will derive a benefit from its being recalled. [2 R. C. L., p. 309, Section 264.] A lunacy proceeding is unlike an administration of the estate of a dead

person. When the probate court of an improper county appoints an administrator the probate court of the proper county will not even appoint an administrator until the first appointment has been vacated. There is no reason for the second appointment. Heirs and creditors have a right to complain of the first appointment and it is impossible for the interests of the dead person to be involved. Not so when a guardian has been appointed for a person who is *non compos mentis.* Martha B. Smith has no heirs because she is still living. She can have no assignees who are interested in her welfare because she is incompetent to make an assignment. Because of her incapacity she cannot prosecute a motion herself. Unless a guardian appointed by the proper probate court may prosecute this kind of motion it may not be prosecuted at all. If this is the law, then a judgment of a court without jurisdiction is as practically efficient as the judgment of a court with full jurisdiction. We are in accord with the view that when a probate court appoints a guardian, executor, or administrator who takes charge of an estate by virtue of that appointment, then no other representative appointed by another probate court may seize the estate or question the conduct of the representative first appointed until he has been removed, even though the proceedings for his appointment were filed in the wrong county. This is a very wholesale rule calculated to avoid confusion. It requires the propriety of the first appointment to be judicially determined before the transfer of the estate and the duties of the office. But when the reason of the rule ceases, the rule ceases. If the probate court of Buchanan county in fact had no jurisdiction to appoint a guardian of the person and estate of Martha B. Smith, then the appointee of that court was at most a *de facto* guardian with an apparent title to the office. The court of the proper jurisdiction, *ex necessitati,* had the power to appoint a guardian for the person of unsound mind if the first appointment was in fact void, even though the fact which defeated the jurisdiction of the court of first appointment did not appear of record. In such case the representative who is appointed by the proper court could not seize the estate nor interfere with the actions of the guardian first appointed without first causing his appointment to be vacated; because upon the face of the record the first appointment was entirely valid, and it is not the policy of the law to allow each of the appointees to decide for himself which is the valid appointment. That is a matter to be determined by the courts. Titles depending upon the record which was fair upon its face will be upheld. But if we went further and held that the proper court could not appoint a guardian and thus invest him with power to so far represent the ward as to question the validity of the first appointment, we would be forced to take the ridiculous position that the first appointment was void, but no one had the right

to question its validity. We hold that if the second appointee succeeds in establishing the fact that the first appointment was void for want of jurisdiction in the court of his appointment then he may proceed to exercise all the powers and is subject to all the duties of his office without any further appointment. But if he fails to establish that the first appointment was void he thereby also establishes that his own appointment was void. This is the effect of the holding in DeJarnett v. Harper, 45 Mo. App. 415. The case of Smith v. Young, 136 Mo. App. 65, is not in conflict with our holding. In that case there was no showing that the trial court had assumed but had not adjudicated the fact necessary to sustain its jurisdiction. Smith v. Young, has been partly overruled by the case of In re Smith, 197 Mo. App. 1. c. 207.

All that we have said goes only to the questions as to whether or not an appeal might be taken from the probate court, whether or not the motion properly invoked the jurisdiction of the probate court to set aside its original order, and whether or not it was filed by a proper party. In passing upon these questions we assumed as a working hypothesis that the ground upon which the jurisdiction was attacked was valid. However, that proposition is challenged by the respondent, and it is necessary to determine whether or not the probate court of Buchanan county obtained jurisdiction by reason of the fact that Martha B. Smith was actually in Buchanan county. Section 444, Revised Statutes 1919, provides that an information in writing shall be given to the probate court that a person *in its county* is an idiot, lunatic, or person of unsound mind and incapable of managing his affairs. Section 447, Revised Statutes 1919, provides that it shall be the duty of any judge of the county court, justice of the peace, sheriff, coroner or constable to make application to the probate court for the exercise of its jurisdiction whenever such officer shall discover any persons, *residents of his county* to be of unsound mind, as in Section 444 mentioned, and that thereupon the like proceedings shall be had as in the case of information by unofficial persons. In Ex parte Zorn, 241 Mo. 267, the evidence showed that when the information upon which a party was adjudged to be of unsound mind was filed, he was an inmate of the state hospital for the insane of St. Joseph, Missouri, where he had been placed as a private patient without any adjudication that he was in fact insane. The proceedings to have him declared insane were instituted in Jackson county because he owned property situated in that county and resided there before he was entered as a private patient in the state hospital in Buchanan county. The Supreme Court said:

"We have no hesitation in holding that Jackson county was *the* proper place to conduct the inquiry into the alleged insanity of petitioner, because that county was the place of his residence. One

of the objects of Article 19, Chapter 2, Revised Statutes of 1909 is to protect and preserve the property of persons of unsound mind. . . . It is apparent that the Legislature intended that the guardians of insane persons should be appointed and their estates administered in the county of their residence where their property is located and where their friends and acquaintances are likely to reside."

The court held that the probate court of Jackson county had the right to issue process to be served in Buchanan county.

In the case of State ex rel. v. Mills, 231 Mo. 493, Judge VALLIANT wrote a separate opinion in which a majority of the court concurred. In that case a woman was confined in an asylum in St. Louis county. While she was so confined her husband moved to the State of Pennsylvania. Shen was then adjudged to be a person of unsound mind by the probate court of St. Louis county. The court held that Mrs. Crouse's legal residence was in Pennsylvania by reason of the fact that her husband had become a resident of Pennsylvania, but that she was personally present in St. Louis county. The court called attention to the fact that the statute does not in terms require that the insane person should be a resident of the county and that the probate court of St. Louis county had jurisdiction to pass upon her sanity. Judge VALLIANT then said:

"I am not now speaking of an insane pauper that would come under the jurisdiction of the county court under another statute, but of a person like Mrs. Crouse who was not a pauper. *If such a person of unsound mind had a legal residence in this State in another county doubtless the probate court of the county of his residence would have jurisdiction.* But in the case of a nonresident, if the probate court of the county where the person in fact is, has no authority to take care of him, he will wander where listeth without care for himself or care for the community in which he is loose."

In the case of State ex rel. v. Wurdeman, 129 Mo. App. 263, the St. Louis Court of Appeals held that the residence of the husband is the residence of the wife, and continues to be her residence even though she is an inmate of an insane asylum elsewhere. The court held that the statute which requires the information to allege that the person of unsound mind is "in its county" and the statute making it the duty of certain officers to file information after they discover such a person "resident of his county" are in the highest degree *in pari materia,* and by no rule of construction could one be given an effect different from what is given the other; that therefore, it was residence that gave jurisdiction and that the words "in its county" meant residing in the county. In this case the court said that it might be proper to conduct such an inquiry if a lunatic wanders from his county into another county, or if a person becomes insane when absent from his home, or perhaps in any case

when no prior proceedings in his home county interfere; that this might be necessary for the welfare of the insane and the safety of the citizens. The court held that our statute supplemented but did not abrogate the chancery rule regarding the venue of insanity cases.

In the case of State ex rel. v. Wurdeman, supra, it was necessary for the court to hold that the words "in its county" as used in what is now Section 444, Revised Statutes 1919, meant "resident in the county" because in that case it was held that the probate court had jurisdiction to adjudge a resident of the county to be of unsound mind although at the time of the adjudication the resident was confined in an insane asylum elsewhere. But that part of the opinion wherein it was suggested that under certain circumstances an adjudication might be valid where the defendant was actually in the county but not a resident thereof, was not involved in the case and was not decided by the court. The case of State ex rel. v. Mills, supra, is authority for the proposition that if a nonresident of the State is actually in the county the probate court has jurisdiction to entertain an inquiry concerning his sanity, but the opinion of Judge VALLIANT concurred in by a majority of the court at least suggests that another rule would be followed if the defendant had been a resident of any county in this State.

The case of Ex parte Zorn, supra, unequivocally holds that the county of the residence of the defendant is the proper place to conduct the inquiry into the alleged insanity. Respondent relies upon the case of Cox v. Osage County, 103 Mo. 385. The Supreme Court in that case only holds that the exercise of jurisdiction by the probate court is not dependent upon the length of time the subject of the inquiry may have resided in the county prior thereto. It is true that in one place the court said that it is sufficient that at the time of the inquiry defendant was actually in the county, but we think from a reading of the whole case that the court only held that the length of time that he had resided therein was immaterial.

We find nothing in the decisions of Missouri which justifies the conclusion that a probate court may inquire into the question of sanity or insanity upon the bare showing that the defendant is actually present in the county. The showing must go farther. Some good reason must be shown why that particular court should exercise its jurisdiction. In this case there is every reason for holding to the contrary. It is a monstrous doctrine that a relative, interested in laying his hands upon the estate of an unfortunate member of his family, may take advantage of the infirmity in order to fix the venue of the proceedings to suit himself. The adjudication of sane or insane is not the only consequence which flows from the exercise of the jurisdiction of the probate court in a lunacy proceeding. The one who stands nearest in blood or marriage to a person of unsound

mind may be the one person in all the world who is least fitted to be guardian of the estate. That fact is likely to have notoriety at the place of residence. Nevertheless, if a husband with ulterior motives may be permitted to choose the county where he may cause his unfortunate wife to be transported, there can be little doubt in the mind of any practical man as to who will be the guardian. We believe that the words "in its county" as used in Section 444 mean "resident in its county," except in exceptional circumstances, which require a different construction upon grounds of public policy. We further believe that where the evidence shows that a husband or other relative has caused a person who is helplessly insane to be transported to another county and there confined against her will the circumstances are against making any exception to the general rule.

We therefore hold that the probate court of Buchanan county had no jurisdiction to adjudge Martha B. Smith to be a person of unsound mind, and therefore had no jurisdiction to appoint a guardian; that the records fail to show that either the probate court or the circuit court made a finding of fact that she was a resident of Buchanan county, but that an affirmative and undisputed showing was made by the respondent in this case that she was a resident of Jackson county; that the motion in this case, being in the nature of a writ of error *coram nobis,* was the proper remedy by which to call to the court's attention the error into which it had fallen by assuming a jurisdictional fact which did not in fact exist. The motion is defective. It should have alleged the fact that Martha B. Smith was not a resident of Buchanan county at the time of the inquiry and that the court assumed that it had jurisdiction but did not make any finding of fact that she was a resident of Buchanan county. However, the defect in the motion was waived by the defendant who voluntarily went to trial upon the real issue. When a case is so tried a motion which alleges nothing but conclusions is sufficient. [Rudd v. Rudd, 13 S. W. (2d) 1082.]

We do not agree that the record shows that the sheriff only summoned fifteen jurors in the probate court. There is no evidence to show whether three of the names on the return were stricken out before or after the return was completed. The presumption of regularity in the proceedings in the probate court results in a presumption that the pencil marks are a spoliation which is no part of the return.

The judgment is reversed and the cause remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.