Ex Parte Mattie M. Hamilton, Petitioner, v. Mitchel J. Henderson, Judge of the Probate Court of Jackson County, Missouri, and Mrs. J. R. Biederman, Respondents.—117 S. W. (2d) 379.

Kansas City Court of Appeals. May 2, 1938.

*Walter A. Leimer* for petitioner (No brief).

*Richard H. Beeson* and *Lawrence E. Welch* for respondents (No brief.)

BLAND, J.—This is a proceeding in *habeas corpus,* wherein the petitioner, Mattie M. Hamilton, seeks to be discharged from the custody of the respondents, Mitchel J. Henderson and Mrs. J. R. Biederman.

The facts show that on May 7, 1936, petitioner was adjudged to be a person of unsound mind by the Probate Court of Jackson county, over which the respondent, Mitchel J. Henderson, presides as

judge; that one A. P. Hamilton was appointed guardian of her person and curator of her estate; that, on the application to said court of said guardian and Maggie Kirkham and Mrs. Maude Banta, the petitioner, on July 27, 1936, upon the order of the court, was removed to and confined in State Hospital No. 3 for the Insane at Nevada in Vernon county; that the petitioner was taken to the hospital and remained there until October 4, 1937, when she was released by a writ of *habeas corpus* issued by the Circuit Court of Vernon County; that on January 15, 1937, one Maude E. Banta, filed information in the Probate Court of Jackson County, seeking an inquiry into the sanity of the petitioner herein and, on that day the court ordered that a notice issue to the petitioner of the filing of the information and that the matter would be inquired into by the court on February 2, 1937. Notice was thereupon issued by the court and directed to the sheriff of Vernon county, commanding him to notify the petitioner of the application filed by Maud E. Banta and that inquiry into said matter would be held on Tuesday, February 2, 1937, at ten o'clock A. M., at which time she would be entitled to be present and be assisted by counsel.

This notice was served upon the petitioner by the sheriff of Vernon county, through his deputy, on January 16, 1937, by delivering a copy of the notice to the petitioner. On February 2, 1937, upon the hearing of a petition filed by the guardian, asking that the original proceedings be dismissed the probate court found that there was "doubt as to the sufficiency of the manner in which the original information was verified," and ordered that the proceedings be dismissed in their entirety and that the guardian be discharged. On the same day an inquiry was held upon the mental condition of the petitioner and she was again adjudged of unsound mind and incapable of managing her affairs and the said A. P. Hamilton was again appointed her guardian and curator of her person and estate. The judgment of the court recited that the petitioner had due legal notice of the proceedings; that she did not appear and the court had appointed an attorney to represent her; that the attorney did not call for or demand a jury and the facts were inquired into by the court sitting as a jury; that the court, after hearing the evidence, found that she was a resident of Jackson county, Missouri, and that she was a person of unsound mind and incapable of managing her affairs.

On the 28th day of September 1937, the petitioner filed an application for a writ of *habeas corpus* in the Vernon County Circuit Court, wherein one T. R. Frazier, the superintendent of the State Hospital No. 3 at Nevada, was made the sole respondent. On October 4, 1937, after a hearing, the court discharged the petitioner from the custody of the superintendent of the State hospital, finding that she was re-

strained of her liberty illegally; that her confinement in the hospital was in violation of law and that she was a sane person. Her guardian had no notice of that proceeding. On November 5, 1937, one Mrs. R. J. Hodgson, on behalf of petitioner, made arrangements for her to "become a resident, boarder and patient" in the home of Mrs. J. R. Biederman, operated as a "convalescent cottage" in Kansas City. Thereafter, petitioner took up her residence in said home and was confined there on March 9, 1938, at the time the present application or petition for the writ of *habeas corpus* was made, alleging that respondents are illegally and wrongfully detaining the petitioner in the home of the said Mrs. J. R. Biederman.

We gather from the petition for the writ that the petitioner is relying upon four grounds to substantiate her claim that she is unlawfully restrained of her liberty. (1) That at the time of the adjudication of her insanity on February 2, 1937, she was not a resident of Jackson county, within the meaning of section 448, Revised Statutes 1929: (2) That the petitioner was denied the right to be present at the hearing held by the Probate Court of Jackson County, on February 2, 1937, by reason of the fact that she had theretofore been incarcerated by the respondent, judge, in the State Hospital: (3) That regardless of the regularity of the proceedings in the Probate Court of Jackson county, she is entitled to her liberty for the reason that she is now sane: (4) That she was declared to be of sound mind and ordered discharged and released from custody and restored to her liberty by the circuit court of Vernon county and that the judgment in that proceeding is *res adjudicata*.

As to the first ground the facts show that the petitioner was a resident of Jackson county, owning valuable property and living therein at the time that she was adjudicated an insane person by the Probate Court of Jackson county, Missouri, on May 7, 1936. Under section 448, Revised Statutes 1929, the probate court of the county of the residence of the person whose sanity is inquired into has exclusive jurisdiction of the proceedings and the fact that such a party is confined in an institution without the county does not change his residence and does not deprive the court of that jurisdiction. [Ex parte Zorn, 241 Mo. 267; State ex rel. v. Mills, 231 Mo. 493; State ex rel. v. Wurdeman, 129 Mo. App. 263; Baker v. Estate of Smith, 223 Mo. App. 1234.] Consequently, petitioner was a resident of Jackson county on February 2, 1937. Moreover, this is a collateral attack upon the judgment of the probate court. "If jurisdiction of the subject-matter and of the person of the alleged lunatic attached in lunacy proceedings, the inquisition cannot be attacked collaterally for errors or irregularities in the proceedings; it remains valid until reversed or set aside. But if lunacy proceedings are void on their

face, they are subject to collateral attack.'' [32 C. J., p. 648; 29 C. J., pp. 25-29; State ex rel. v. Brasher, 200 Mo. App. 117, 126; Hartman v. Henry, 280 Mo. 478; Ex parte v. Dixon, 52 S. W. 181.] Though probate courts are of limited jurisdiction, yet, in matters where their original jurisdiction is exclusive, their judgments are entitled to all the presumptions which protect the judgments of courts of general jurisdiction. [Crohn v. Modern Woodmen of Am., 145 Mo. App. 158.]

The residence of the petitioner was a question of fact which the probate court had jurisdiction to inquire into and, having determined that she was a resident of Jackson county, the judgment so determining the question is not subject to collateral attack, and is conclusive upon us in this proceeding. [Baker v. Estate of Smith, *supra*; Herman v. St. Francois County Bank, 291 S. W. 156; State ex rel. v. Mueller, 51 S. W. (2d) 8, 12.] This case is not like that of Mullins v. Rieger, 169 Mo. 521, for in that case the sheriff's return contradicted the recitals of the judgment. [See, also, State ex rel. v. Holtkamp, 51 S. W. (2d) 13.]

The contention that the petitioner was incarcerated in the State Hospital at the time she was notified to appear at the insanity proceedings, held on February 2, 1937, and, consequently, she was not able to be present to make a defense and, for that reason, the proceedings were void, will be ruled against the petitioner on the authority of In re Moynihan, 62 S. W. (2d) 410, where a similar contention was made. In this connection, while no point is made concerning it, we may state that a probate court has authority to set aside at a subesquent term, an adjudication of lunacy. [In the Matter of Marquis, 85 Mo. 615.]

We are of the opinion that the petitioner may not maintain a writ of *habeas corpus* on the ground that she is now sane. While there is some authority that *habeas corpus* is the proper method of inquiring into the present sanity of a person restrained of his liberty and that a former adjudication is not *res adjudicata* because there may be a change of the condition of the person declared to be insane (see 29 C. J., pp. 105, 106; 12 R. C. L., p. 1186, and cases cited), in none of these authorities do we find statutes similar to those in this State covering the discharge of persons who have been adjudged insane by the probate court and are under guardianship. Some of these authorities have to do with the discharge of persons who have been committed to insane asylums not by civil action but by magistrates and the like, and where no guardian has been appointed. Under such circumstances no *court* is authorized to discharge such a person except by a writ of *habeas corpus*. [See Kellogg v. Cochran, 87 Calif. 192; Aldrich v. Superior Court, 120 Calif. 140.]

Our statutes provide ample relief in the probate court to persons

who have been adjudged insane and under guardianship, upon their restoration to sanity. Section 452 provides for a guardian of persons adjudged insane by the probate court who, by section 461, is given charge of his person and is required to provide support and maintenance for the ward. Section 498 provides for the confinement of his ward by the guardian and section 496 for the removal of the guardian. To safeguard the rights of any person who may claim to have been improperly adjudged insane, provision is made by section 456, whereby the court may, at any time during the term in which an inquisition is had, set same aside and cause a new inquiry into the facts. Sections 493 and 494 provide that *any person* may file in the probate court an allegation that a person, who has theretofore been declared by such court to have been of unsound mind, has recovered and, thereupon, the court shall hold an inquiry as to the sanity of such person and, upon such inquiry, if such person is found to be not restored to his right mind, such person, or *any one* for him may, within ten days after such finding, file an allegation, in writing, that such person is of unsound mind and is aggrieved by the action and finding of the court, whereupon, the court shall cause the facts to be inquired into by a jury. Section 494 provides for the discharge of a person found to be sane, from the care and custody of his guardian, and that the latter shall immediately settle his accounts and turn over all property and accounts to him. Sections 1938, 285 and 292 provide for appeals from judgments of probate courts against a finding of restoration, as well as from the original adjudication of insanity, and that a trial *de novo* of his sanity shall be held in the appellate (circuit) court. [Baker v. Estate of Smith, *supra*, l. c. 1241.]

Section 486 provides: "No contract of any person found to be of unsound mind, as hereinbefore specified, which shall be made without the consent of his guardian, shall be valid or binding, and such guardian may sue for and recover any money or property which may have been sold or disposed of by his ward without his consent." Under this section it is held that an adjudication of insanity is conclusive on the question until set aside and cannot be questioned in a collateral proceeding on the ground that restoration of sanity has taken place. [Kiehne v. Wessell, 53 Mo. App. 667; Herman v. St. Francois County Bank, *supra*; Cockrill v. Cockrill, 79 Fed. 143; Wadsworth v. Sharpsteen et al., 8 N. Y. 388; Imhoff v. Witmer's. Admr., 31 Pa. St. 243.]

The petitioner could obtain all of the relief she seeks in this proceeding by applying to the probate court of Jackson county, for an order restoring her sanity. [In re Moynihan, *supra*, l. c. 419.] It is well settled that *habeas corpus* is a discretionary writ, and it will not be issued when it is unnecessary to afford petitioner the relief

to which he is entitled. [29 C. J., pp. 13, 14; State ex rel. v. Wurdeman, 254 Mo. 561.] The court may, in its discretion, refuse the writ where there is another adequate remedy. [29 C. J., pp. 17, 18; In the Matter of Young Campbell, 323 Mo. 757; McLaughlin v. Barr (Ky.), 230 S. W. 304; Hartman v. Henry, supra, l. c. 478, 481, 482; Ex parte Kaufman, 73 Mo. 588.] It is not to be substituted for an appeal. [29 C. J., p. 19; In the Matter of Young Campbell, supra; Hartman v. Henry, supra.)

That a court of competent jurisdiction may inquire into the proper custody of children under a writ of habeas corpus, and adjudge the custody under facts then existing, is not authority for the contention that a court, by means of habeas corpus, may inquire into the present sanity of a person who has been duly and legally adjudged insane by another court of competent jurisdiction and is under guardianship. Section 1495 of the Habeas Corpus Act expressly provides for such a proceeding in a dispute between husband and wife for the custody of their children. An action in habeas corpus involving the custody of a child is a peculiar one. It has few of the attributes of a habeas corpus proceeding. The person whose custody is involved is not even a party. In its nature it is really a suit in equity, based upon considerations wholly inapplicable to sanity proceedings (see Ex parte Badger, 226 S. W. 936), and even, in such proceedings, it is held that, where another court has assumed jurisdiction over the subject-matter cognizance of it will not be taken by habeas corpus. [In re Gladys Morgan, 117 Mo. 249.]

Cases reviewing contempt proceedings by habeas corpus are not in point. There is no appeal from an adjudication of direct or criminal contempt and the law relative to the review of such judgments by habeas corpus is peculiar to such proceedings. A full discussion of this subject is made in the case of In re Howell and Ewing, 273 Mo. 96.

Section 1479, provides that no person who has been discharged by order of any court or magistrate, upon a writ of habeas corpus issued pursuant to the statute relative to habeas corpus, shall be again imprisoned, restrained or kept in custody for the same cause, except for certain exceptions not here material.

By reason of section 1479 petitioner claims that, having been discharged by the circuit court of Vernon county, under a writ of habeas corpus, she can no longer be restrained of her liberty. However, that section has to do with a discharge by order of any court or magistrate having jurisdiction in the premises, for an order of a court having no jurisdiction to make it is coram non judice. There is no doubt that the statute relating to insane persons under guardianship contemplates that the probate court of the county of the residence of the insane person shall have exclusive jurisdiction over

such persons. [State ex rel. v. Littrell, 26 S. W. (2d) 768; Ex parte Zorn, *supra*; Herman v. St. Francois County Bank, *supra*; Kiehne v. Wessell, *supra*; Cockrill v. Cockrill, *supra*; Wadsworth v. Sharpsteen et al., *supra*; Imhoff v. Witmer's Admr., *supra;* 32 C. J., pp. 673, 674; State ex rel. v. Rutledge, 321 Mo. 1090.] Therefore, we are of the opinion that the circuit court of Vernon county had no jurisdiction in the *habeas corpus* proceeding brought there and that the judgment in the proceeding was *coram non judice* and void.

Under the *Habeas Corpus* Act, section 1457, Revised Statutes 1929, it is the duty of the court or magistrate to whom application has been made for the writ to forthwith remand the party, if it shall appear that he is detained in custody by virtue of process issued by any other court, in a cause where such a court has exclusive jurisdiction, or by virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction. None of the exceptions provided in section 1459, as modified 1460, are applicable to the facts here shown. [Ex parte v. Dixon, *supra*; see Ex parte George Lee, 248 Mo. 1.] It is, therefore, our duty to remand the petitioner.

The question suggests itself as to whether the respondents herein are the proper parties for a proceeding of this kind. It will be noted that the guardian is not made a party, but the judge of the probate court where the adjudication of insanity was made and the person, whom, evidently, the guardian has directed to retain custody of the petitioner. Owing to the fact that no question has been raised as to the proper parties respondents, we have concluded to decide this case on its merits.

While, we find, technically, that the return of the respondent, Mrs. J. R. Biederman, shows no lawful grounds for the restraint of the petitioner, we could not discharge her for this reason as, unquestionably, she is properly in custody under the judgments and orders of the probate court of Jackson county, and it appears that the real purpose of this proceeding is to determine whether she may be released in view of such orders and judgments.

It appearing that the petitioner has no right, under the facts in this case, to the writ of *habeas corpus,* the proceedings are dismissed and the petitioner is remanded to custody. All concur.