EMIL VAN LOO, as Guardian and Curator of ANNA VAN LOO, v. OSAGE COUNTY, Appellant.—141 S. W. (2d) 805.

Division One, June 28, 1940.

AFFIRMED.

*Marion R. Garstang* for appellant.

*John P. Peters* and *H. Balkenbush* for respondent.

BRADLEY, C.—This is an appeal (advanced on the docket) from a judgment for $84.80 against Osage county. The cause was tried on an agreed statement. In proceedings had July 14, 1939, in the probate court of Osage county, Anna Van Loo was found to be a person of unsound mind, and Emil Van Loo, respondent here, was appointed guardian and curator. Appraisers were duly appointed, but no property was found and they so reported. Thereupon, the guardian filed petition alleging that "Anna Van Loo has no property, real, personal or mixed, and that therefore she is unable to support herself; that there is no person lawfully charged with her support capable or able so to do; that the said Anna Van Loo was on the 14th day of July, 1939, duly adjudged to be a person of unsound

mind in the probate court of Osage county, Missouri; that the said Anna Van Loo cannot safely be permitted to remain at large with safety to herself and the community in which she resides; that it is necessary to incarcerate the said Anna Van Loo in the state hospital at Fulton, Missouri, for treatment and confinement.'' The court found the petition to be true, and made an order ''that the said Anna Van Loo be confined and transmitted by said guardian to the state hospital number one at Fulton, Missouri, for confinement and treatment, as a county patient; and it is further ordered that a bill of costs of all the expenses connected therewith, including the costs of the proceedings in the probate court, be certified to the county court of Osage county, Missouri, for payment. It is further ordered that a certified copy of the proceedings in said cause be transmitted to the county court of Osage county, Missouri.''

It was agreed that the bill of costs (running, without objection, in the name of the guardian as claimant), amounting to $84.80, was certified to the county court (August 7, 1939) for payment; that payment was refused, and an appeal taken to the circuit court. It was agreed that the ''information and the proceedings had thereon and said insanity hearing held by said probate court, fully complied with all the requirements of Sec. 448, R. S. 1929 (Ann. Stat., p. 281), and subsequent sections relating to insanity hearings in the probate court, and that all steps required by said sections were properly taken.''

It was agreed that Anna Van Loo had no property, and that no one was liable for her support at the Fulton state hospital, and that ''the services charged for in said bill of costs were rendered by the parties claiming fees; that the attorneys, John P. Peters and Henry Balkenbush (named in the bill of costs) were duly appointed (by the probate court) to represent said Anna Van Loo at said hearing, and that the sum of $25 was allowed them by the court and taxed as costs for this service; that the witnesses were subpoenaed and testified; that the sheriff performed the services for which he has charged; that the probate court performed the services for which it has charged.''

Counsel for the county, in his statement, says that the county court refused to pay the bill ''on the ground that exclusive jurisdiction to hear insanity cases and commit insane persons to the state hospital as a county patient was vested in the county court, and that the probate court had no authority or jurisdiction to hear insanity cases and commit insane poor to the state hospital and that the jurisdiction of said probate court was dependent on it first being shown that the subject of the inquiry was possessed of property.''

These questions are presented: Is the jurisdiction to hold a sanity inquisition of *a poor person,* as defined by law, exclusively in the county court or is such jurisdiction concurrent in the county and probate court? and if the probate court has such jurisdiction, has it also the

authority to commit, at public expense, *a poor person,* adjudged to be of unsound mind, to a state hospital?

Counsel for appellant in his brief says: "For many years it has been the practice in Osage County to hold all insanity hearings before the probate court. If it was found that the subject of the inquiry was insane and in need of confinement in a state hospital and that he had no property sufficient to support him at said hospital, the probate court made an order that the patient be committed to the hospital as a county patient. The commitment was presented to the county court who furnished the necessary funds for the advance payment of board and the patient was conveyed to the hospital. Thereafter the county regularly paid the board of the patient and the probate court certified to the county court a bill of costs for the proceeding in the probate court which was always paid. . . However, the State Auditor, upon making the county audit, challenged the procedure and threatened that if any further costs were paid in that manner that they would be charged up as illegal payments and the county court charged up with a shortage of that amount."

█ There can be no doubt about probate courts having jurisdiction to hold sanity inquisitions. [Constitution, Sec. 34, Art. 6; Sec. 448, R. S. 1929, Ann. Stat., p. 281; Cox v. Osage County, 103 Mo. 385, 15 S. W. 763; Redmond v. Quincy, Omaha & K. C. Railway Co., 225 Mo. 721, 126 S. W. 159; Ex Parte Zorn, 241 Mo. 267, 145 S. W. 62.] The probate court procedure in sanity inquisitions is set out in Secs. 448 et seq., R. S. 1929, Ann. Stat., pp. 281 et seq. Sec. 448 provides:

"If information in writing, verified by the informant on his best information and belief, be given to the probate court that *any person* (Italics ours) in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: *Provided,* that if neither the party giving the information in writing, nor the party whose sanity is being inquired into call for or demand a jury, then the facts may be inquired into by the court sitting as a jury."

Sec. 448 has come down from the act of 1817 of the General Assembly of the Territory of Missouri. [1 Missouri Territorial Laws, p. 507.] In the revision of 1899, what is now Sec. 448 was Sec. 3650, and was the same as at present except that verification was not required and there was no proviso. In 1903 (Laws 1903, p. 200) a proviso was added as follows: "Provided, that the probate court shall not have jurisdiction to inquire into the insanity of any person who is the owner of no property." The proviso of 1903 was held to be unconstitutional and void. [Redmond v. Quincy, Omaha & K. C. Railroad Co. (March, 1910), 225 Mo. 721, 126 S. W. 159; State ex rel. Crouse et al. v. Mills et al. (December 17, 1910), 231 Mo. 493,

133 S. W. 22.] In 1913 (Laws 1913, p. 94) the 1903 proviso was stricken from the section and the present proviso enacted. In 1917 (Laws 1917, p. 102) the section was again amended to require the information to be verified. There have been no changes since 1917.

Sec. 449 provides for the filing of the information in vacation of the probate court. Sec. 450 provides for notice to the alleged insane person, service thereof, and for the appointment of counsel, in the event no counsel appears, and it is provided in this section that the court shall allow to such appointed counsel "a reasonable attorney fee for the services rendered, same to be taxed as costs in such proceeding." Sec. 452 provides for the appointment of a guardian in case the alleged insane person is found to be of unsound mind.

Sec. 454 provides: "When any person shall be found to be insane according to the preceding provisions, the costs of the proceedings shall be paid out of his estate, or, if that be insufficient, by the county."

Sec. 498, R. S. 1929, Ann. Stat., p. 301 provides: "If any person, by lunacy or otherwise, shall be furiously mad, or so far disordered in his mind as to endanger his own person or the person or property of others, it shall be the duty of his or her guardian, or other person under whose care he or she may be, and who is bound to provide for his or her support, to confine him or her in some suitable place until the next sitting of the probate court for the county, *who shall make such order for the restraint* . . . of such person as the circumstances of the case shall require." (Italics ours.)

Sec. 499 provides: "If any such person of unsound mind, as in the last preceding section is specified, shall not be confined by the person having charge of him, or there be no person having such charge, any judge of a court of record, or any two justices of the peace, may cause such insane person to be apprehended, and may employ any person to confine him or her in some suitable place, *until the probate court shall make further orders therein, as in the* preceding section specified." (Italics ours.)

Sec. 502 Reads: "If any insane person be admitted into the state lunatic asylum as a patient, the guardian shall pay for his support and expenses at such asylum, out of the estate of such ward; and if such insane person shall, at any time, come under the class of 'insane poor persons,' as specified in the law for the government of the state lunatic asylum and care of the insane, such person shall be supported and maintained at such asylum by the county in the manner provided by such law."

Ex Parte Zorn, 241 Mo. 267, 145 S. W. 62, cited, supra, was in habeas corpus, and was decided March 21, 1912. The petitioner was adjudged to be of unsound mind by the probate court of Jackson county, but it was claimed that the court did not have jurisdiction, not on the ground that the petitioner had no property when so adjudged, but on the ground that there was no valid service of notice. In

ruling the point the court said: "We have no hesitation in holding that Jackson county was the proper place to conduct the inquiry into the alleged insanity of petitioner, because that county was the place of his residence. One of the objects of article 19, chapter 2, Revised Statutes 1909 (now Secs. 448 et seq. R. S. 1929) is to protect and preserve the property of persons of unsound mind. *This is evidenced by the fact that the proceeding cannot be instituted in the probate court if the insane person has no property.*" No authority was cited to support the part we have italicized, but in view of the language used it is likely that the author of the opinion had in mind the 1903 proviso that was in Sec. 474, R. S. 1909, and overlooked the Redmond case and State ex rel. Crouse, supra, holding this proviso unconstitutional and void. Also, it is quite apparent that the italicized part of the quote, supra, from the Zorn case is *obiter*.

Cox v. Osage County, 103 Mo. 385, 15 S. W. 763, supra, was decided under Sec. 5787, R. S. 1879, which was the same as Sec. 448, R. S. 1929, except that there was no requirement for verification and no proviso. In that case it appears that one Molliter, on September 16, 1886, by a verdict of a jury in the probate court of Osage County "was found to be of unsound mind and incapable of managing his own affairs; also, to be so disordered (See Sec. 5828, R. S. 1879, now Sec. 498, R. S. 1929) in his mind as to endanger his own person and the property of others." A guardian was appointed for Molliter, but he was placed "in the custody of the sheriff" who was directed to take the necessary steps to confine him "in some suitable place so as to protect the safety of the community until further orders from the court, or until the county court of Osage County can make suitable provisions for his safekeeping, and said sheriff will make due report to this court of his necessary expenditure of money in his behalf." July 18, 1887, the sheriff made report of expense to the probate court and an order was made reciting that "Molliter was entirely without means, and, there being no one whose duty it was by law to support him, the report of the sheriff was approved and the sum of $356 was allowed him for expenses attending Molliter's confinement," and it was ordered that a certified copy of the order allowing the expenses "be certified to the county court of Osage County for payment." The county court refused to pay, and sheriff Cox appealed to the circuit court where judgment went for him, which judgment was affirmed by this court.

In the Cox case (103 Mo. l. c. 388, 15 S. W. 763,) the court said: "By law the probate court in each county is vested with jurisdiction *de lunatico inquirendo* as to *any person in such county* charged by information in writing to be of unsound mind." (Italics ours.)
There is nothing in Sec. 34, Art. 6 of the Constitution, or any statute now in existence, or in any court decision except in the Zorn case, supra, to suggest that jurisdiction of the probate court to hold a

sanity inquisition is conditioned upon such ownership of property as to take the alleged insane person out of the indigent class, and as appears, supra, this court ruled in the Redmond case (225 Mo. 721, 126 S. W. 159) that the Legislature could not so condition the jurisdiction of the probate court.

So far, we have dealt with statutory provisions concerning sanity inquisitions in the probate court, and we now take up such inquisitions in the county court. Sec. 8636, R. S. 1929, Ann. Stat., p. 7741, amended, Laws 1935, p. 388, among other things, provides that the "county courts shall have power to send to a state hospital such of their *insane poor* as may be entitled to admission thereto" (Italics ours). Sec. 8643 et seq., R. S. 1929, Ann. Stat., p. 7744 et seq.), as amended, Laws 1937, p. 509 et seq., give the procedure for the admission of "county patients" to state hospitals, commonly referred to as asylums.

Sec. 8652 prescribes the procedure to be followed to commit to a state hospital an indigent resident of a county who is confined in a private or public charitable institution, and becomes insane.

Sec. 8653 provides that, under certain conditions, *pay patients* in a state hospital may be made county patients, and Sec. 8654 provides that, under certain conditions, county patients may be made pay patients.

Sec. 8664 defines an *insane poor person* or *indigent insane person* as one who does not have property exceeding in value his or her liabilities and statutory exemptions. *County patients* are defined by Sec. 8664 as those "supported in a state hospital at the expense of the counties sending them."

In the circuit court, a *poor person* (as defined in law) found not guilty of crime on the sole ground of being insane at time of commission, and found not to have recovered and not a fit person to be at large is not committed to a state hospital (insane asylum) by the circuit court, but is held "until the county court shall cause him to be removed to a state hospital, as in the cases of insane poor persons: *Provided*, no exmination into the insanity of the prisoner shall take place before the county court, as provided in Sections 8643, 8644, 8646 and 8647; but the county court and clerk thereof shall proceed, and the prisoner be dealt with in like manner as other insane poor persons are required to be, after examination had by the county court. It shall be the duty of the clerk of the court trying the prisoner to make out a copy, under his official seal, of the judgment of acquittal of the prisoner, and the order required by the first part of this section, to be delivered to the officer having custody of the prisoner for his authority for such custody." [Secs. 8655, 8657 R. S. 1929, Ann. Stat., pp. 7749, 7750.]

Thus it appears that definite statutory procedure is prescribed for the circuit court when it has for disposition an insane *poor person*,

but no such definite statutory procedure is prescribed for the probate court when proceeding on an information filed under Sec. 448, and it turns out, as in the present case, that the alleged insane person is in law a *poor person*. As we have seen, supra, the Legislature cannot condition the jurisdiction of the probate court to hold sanity inquisitions, yet such court is not authorized to commit an *insane poor person* to a state hospital. In Ussery v. Haynes et al., 344 Mo. 530, 127 S. W. (2d) l. c. 414, it is stated that the county court is "the only court that has authority to order an insane person sent to a state hospital at the public expense." This pronouncement, as well as the conclusion reached in the present case, does not run counter to Sec. 512, R. S. 1929, Ann. Stat., p. 307, because that section, as appears from Secs. 509-511, R. S. 1929, deals with *sane* drug addicts, and not with the *insane poor*.

As stated, in the case of Ex Parte Zorn, supra, it was contended that the alleged insane person had not been properly served with notice. The point was that the probate court of Jackson county "possessed no jurisdiction to send its process to Buchanan County" for service; that there was "no statute authorizing a probate court to send its process beyond its county and thereby acquire jurisdiction to adjudge parties insane who are outside of the county where the proceeding is instituted." There was no specific statute authorizing such service, but the court ruled as follows (241 Mo. l. c. 270, 145 S. W. 62): "We have no hesitation in holding that Jackson County was the proper place to conduct the inquiry into the alleged insanity of petitioner, because that county was the place of his residence. . . . It is apparent that the Legislature intended that the guardians of insane persons should be appointed and their estates administered in the county of their residence where their property is located, and where their friends and acquaintances are likely to reside. . . . Probate courts are part of the judicial system of our state, being created by the Constitution, and empowered by that document to pass upon the sanity of individuals; therefore, the instrumentalities for invoking their jurisdiction in that class of cases may be prescribed by general law," citing Secs. 3863 and 4061, R. S. 1909, now Secs. 1844 and 2051, R. S. 1929, Ann. Stat., pp. 2565 and 2645. Sec. 1844 provides that "all courts shall have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law." Sec. 2051 provides that "the judge of probate shall be a conservator of the peace, and shall have power to issue all writs which may be necessary in the exercise of the jurisdiction of said court, according to the usage and principles of law. . . ."

In addition to what was said in the Zorn case, and in Secs. 498, 499, 1844, and 2051, supra, Sec. 475, R. S. 1929, Ann. Stat., p. 293 provides, among other things, that "every probate court, by whom any

insane person is committed to guardianship, *may make an order for the restraint*" of such person. (Italics ours.)

■ It is our conclusion and we so rule that the probate court has concurrent jurisdiction with the county court to hold sanity inquisitions of *poor persons,* but that such court has no authority to commit an *insane poor person* to a state hospital. And we further rule that when a *poor person* is adjudged by the probate court to be insane and also found by said court to be disordered in mind, etc., as set out in Sec. 498, supra, then the probate court has the authority to make an order that such person be held until the county court shall cause him or her, as the case may be, to be "removed to a state hospital" as provided in Sec. 8657, R. S. 1929, for the circuit court, and to transmit to the county court a certified copy of its proceedings in the matter. And in such situation there would be, as in the circuit court procedure, no occasion for any adjudication of sanity in the county court. The procedure in the Cox case, supra, was such or similar.

■ As appears, supra, from Sec. 454, R. S. 1929, and from the Cox case, when a person is adjudged insane in the probate court, and the costs cannot be paid out of the estate of such insane person, then the county is liable for such costs, and the fact that the probate court committed Anna Van Loo to the state hospital at Fulton, instead of ordering her held for disposition by the county court, would not relieve the county of its duty to pay the costs. The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.