STATE OF MISSOURI AT THE RELATION OF JOSEPH J. MOSER ON PETITION AND AFFIDAVIT MADE BY EDWARD E. NABER IN HIS BEHALF FOR RESTORATION OF SOUNDNESS OF MIND, v. GEORGE S. MONTGOMERY, PRESIDING JUDGE, FRED KLABER, JUDGE OF WESTERN DISTRICT AND WALTER L. YOST, JUDGE OF THE EASTERN DISTRICT, JUDGES OF THE COUNTY·COURT OF JACKSON COUNTY, MISSOURI, AND BEN NORDBERG, CLERK OF THE COUNTY COURT OF JACKSON COUNTY, MISSOURI.—186 S. W. (2d) 553.

Kansas City Court of Appeals, March 5, 1945.

*George K. Brasher* and *Edwin A. Harris* for appellants.

*Edward E. Naber* and *Jay L. Oldham* for respondent, Joseph J. Moser.

1230

CAVE, J.—This action was first instituted in the County Court of Jackson County by respondent, Joseph J. Moser, by next friend, filing a petition in that court seeking to have the county court hold an inquisition to determine whether he had recovered his sanity. A hearing was had and the court entered an order finding that he had fully recovered his sanity and was competent to manage his affairs; but the court also found that it had no jurisdiction of the matter and was without authority to grant the relief prayed for and dismissed his petition.

There being no appeal allowed the cause was taken to the circuit court of Jackson County by writ of certiorari and, after a hearing,

that court decreed that the county court did have jurisdiction of the parties and the subject matter and ordered the county court to enter a judgment discharging Moser in accordance with its finding on the merits. The members of the county court and the clerk appealed from that judgment.

The facts are not in dispute and, briefly stated, are: On June 2, 1927, the county court of Jackson County adjudged Moser a person of unsound mind and ordered him committed to State Hospital No. 2 as a county or indigent patient. He was confined there until April 23, 1938, when he was paroled from that institution by the superintendent and, on April 19, 1939, the acting superintendent discharged him therefrom and made an entry on the hospital records to that effect, but did not assign any reason for such discharge.

It is admitted that, at the hearing of the present case in the county court, there was testimony of competent physicians and lay witnesses tending to prove that Moser had long since recovered his soundness of mind, and, for a number of years, had been very capably managing his affairs and was engaged in a gainful occupation and enjoying the respect and confidence of his acquaintances; that he was named beneficiary in an insurance policy and entitled to receive a considerable sum of money therefrom, but that said insurance company would not pay to him the money it admitted he was entitled to receive until his restoration of sanity be judicially declared or a guardian be appointed for him.

Several assignments of error are made, but they all revolve around the vital and fundamental question of whether the county court has jurisdiction to hold a hearing and decide whether a person, who was originally found to be of unsound mind by that court, has been restored to mental soundness. If the county court has such jurisdiction, then it erred in dismissing Moser's petition, but if it does not have, then it did not err.

The specific question presented has never been decided by an appellate court.

It is now well established in this state that a county court has jurisdiction to conduct a hearing and determine whether an *indigent* citizen of that county is a person of unsound mind, and if it so finds it may commit him to a state hospital at county expense. [Downey et al. v. Schrader (Mo. Sup. en banc), 182 S. W. (2d) 320.] It has also been held that the probate court has concurrent jurisdiction with the county court to hold sanity inquisitions of an *indigent person,* but that the probate court has no authority to commit such person to a state hospital. The county court is the only court that can *commit* such person to such a hospital. [Ussery v. Haines, 344 Mo. 530, 537, 127 S. W. (2d) 410; Van Loo v. Osage County, 346 Mo. 358, 366, 141 S. W. (2d) 805, 809.]

In citing statutes, it will be understood we are referring to the 1939 Revision, unless otherwise indicated.

Article 18, Chap. 1, charts the procedure in probate courts to determine the sanity of an individual, the appointment of a guardian, the management of the ward's estate, etc. Sec. 492 of that article provides that if any person shall file in the probate court an allegation in writing that any person ". . . who has heretofore been declared by such court to be of unsound mind, or insane, has been restored to his right mind, the court shall hold an inquiry as to the sanity of such person: . . ." There is no similar statute authorizing the county court to conduct such a hearing on an application of a person, or some one for him, who has been found to be of unsound mind and committed to a state hospital by that court.

The only authority the county court has to hold a lunacy inquisition is when the proposed patient is indigent and the county will have to pay for his keep. The authority and procedure for such a hearing are to be found in Secs. 9328 and 9335-9341. The first section mentioned provides "The several county courts shall have power to send to a state hospital such of their insane poor as may be entitled to admission thereto." The other sections referred to provide for the filing of the complaint, notice to alleged insane person, the manner of conducting the hearing, either before the court or jury, and the order to be made. The only statute which makes any provision for the release or discharge from a state hospital of an indigent patient so committed, is Section 9321. The pertinent part of that section is: ". . . Any patient so admitted may be discharged or paroled whenever in the judgment of the superintendent and his staff such person should be discharged or paroled. The decision of the superintendent and his staff on such matter shall be final and the respective counties of this State are hereby prohibited from removing any indigent insane person unless such insane person is discharged as herein provided." It is clear that this section does not authorize the county court to conduct such a hearing as was desired in this case.

For many years prior to the adoption of our present Constitution in 1875, the county court also had probate jurisdiction and, during that time, it was specifically authorized to conduct a hearing, if an application was made alleging that a person who had been declared of unsound mind by that court, had regained his mental faculties. [Sec. 39, Chap. 40, Revised Statutes, 1865.] But the Constitution of 1875 authorized the establishment of probate courts, which was later done by legislative act, and they were given exclusive jurisdiction over matters pertaining to probate business, thereby relieving the county courts of any such jurisdiction. They were also given exclusive jurisdiction to conduct lanacy hearings when guardians and curators were to be appointed. At about the same time the Legislature transferred to the probate code what is now sec. 492, *supra,* thus transferring to the probate courts specific authority to inquire whether a person who had been declared of unsound mind by that

court had been restored, and left no similar statutory authority in the county courts. But respondent contends that such legislative stripping of the jurisdiction of the county courts did not divest them of authority to conduct a hearing, such as is sought here, for certain reasons to be noted.

Respondent concedes the original order of the county court declaring him a person of unsound mind and ordering him committed to a state hospital is valid. He does not seek to set it aside on any ground that the proceeding in or order of the county court was irregular, unlawful or a denial to him of any of his rights. The sole basis of this proceeding is that he has been restored to mental soundness and therefore the court, which made the original order, now has jurisdiction, after a hearing, to declare him a person of sound mind. He concedes there is no specific statutory authority for such proceeding, but argues that the county court has *inherent* power to conduct such a hearing and decree that he has been restored to mental soundness. He cites the case of Brandon v. Carter et al., 119 Mo. 572. The holding in that case is not applicable, because the Supreme Court was discussing the inherent power of the circuit court, which is a court of general jurisdiction, whereas the county court is a court of limited jurisdiction. He also cites and quotes from State ex rel. v. Corneli, 152 S. W. (2d) 83, an opinion by the court en banc. He quotes this language, p. 85: ''. . . the county court has inherent power to make orders necessary for the protection of its jurisdiction and the exercise of the power vested in it.'' A reading of the opinion discloses he is quoting from argument of counsel and not from language of the court. In disposing of such argument, the court said: ''We concede that the county court is created as a court of record and its jurisdiction partially fixed by the constitution. . . . But the authorities are uniform to the effect that county courts possess only limited jurisdiction. *Outside the management of the fiscal affairs of the county, such courts possess no power except those conferred by statute.*'' (Italics ours.) He also cites the case of King v. Maries County, 249 S. W. 418. In discussing the jurisdiction of county courts it was said, 420: ''Their powers are limited and defined by law. They have only such authority as is expressly granted them by statute. . . . This is qualified by the rule that the express grant of power carries with it such implied powers as are necessary to carry out or make effectual the purposes of the authority expressly granted. . . . Such power must be related to the subject with which the court was attempting to deal, *and necessary to be exercised by the court in the discharge of a duty imposed by law upon that body.*'' (Italics ours.) In the instant case it was the statutory duty of the county court to conduct a hearing as to Moser's sanity and if it found him to be of unsound mind to commit him to a state hospital for treatment and safekeeping, but can it be said that it

necessarily follows therefrom that the county court has implied authority to conduct a hearing for the purpose of having said person declared sane and restored to his civil rights? We think not.

Respondent ably argues that when the statutes authorize county courts to commit a person of unsound mind to the state hospital, but fail to provide for any subsequent action by that court on the recovery of a patient, then ". . . the common law provides the missing link and supplies the remedy." We need not discuss and distinguish the various cases cited because they deal with courts of *general jurisdiction* and are not applicable to county courts which have very limited jurisdiction. Furthermore, in State ex rel. v. Jackson, 84 S. W. (2d) 988, 989, it was specifically held that county courts have no common law jurisdiction.

It is also forcefully argued that "there is a remedy for every wrong." We concede this to be the settled policy of the law in this country. But it does not follow that such *remedy* can be provided by a court of such limited and restricted jurisdiction as the county courts of this State. We will not discuss or decide the interesting question of whether some court of general jurisdiction could grant the desired relief to the petitioner, because such a question is not presented or briefed by either party.

There being no statute authorizing the county court to conduct such a hearing as was requested in this case, and there being no statute from which we can reasonably say such authority may be implied, and the county court not having any common law jurisdiction, even if the common law would supply any relief to the petitioner, we reluctantly conclude that the county court had no jurisdiction in this matter and properly dismissed the petition. This is a condition which the Legislature could, and, in our opinion, should correct, by enacting proper statutory authority.

It is unnecessary to discuss other questions raised by appellants.

It follows that the judgment of the circuit court should be reversed.