The Honorable Thomas W. Marshall Representative, District 116 State Capitol Building, Room 235BA Jefferson City, Missouri 65101
Dear Representative Marshall:
This opinion is in response to your question asking if the Saline County Public Administrator is eligible to employ a secretary under the provisions of Section 473.737, as enacted in Conference Committee Substitute for House Committee Substitute for Senate Committee Substitute for Senate Bills Nos. 127, 72, 161, 171, 275 120, 85th General Assembly, First Regular Session (1989) (hereinafter "Senate Bills Nos. 127, 72, 161, 171, 275 120").
The answer to this question depends upon the interpretation of the term "state mental hospital" and whether the term includes a mental retardation facility.
Subsection 2 of Section 473.737, RSMo Supp. 1989, as enacted by Senate Bills Nos. 127, 72, 161, 171, 275 120, provides:
 2. Each public administrator of a county, except a county of the first class having a charter form of government, in which a state mental hospital is located shall be entitled to one secretary for one hundred cases or more handled by the office of the public administrator in the immediately preceding calendar year. Each secretary employed pursuant to the provisions of this subsection shall be paid in the same pay range as a court clerk II in the circuit court personnel system. All compensation paid secretaries employed pursuant to the provisions of this section shall be paid out of the county treasury and the commissioner of administration shall annually reimburse each county for the compensation so paid upon proper demand being made out of appropriations made for that purpose. The public administrator in such counties may also appoint a person to act as public administrator to serve during the absence of the public administrator. [Emphasis added.]
You have provided the following statement of facts as being relevant to your question:
 The bill in question authorized a secretary for public administrators in counties where a "state mental hospital is located." There is currently no definition of "state mental hospital" in the statutes. There was a definition of "hospital" in the 1969 statutes which included the then Marshall State School and Hospital, that definition is no longer in the statutes. The renamed Marshall Habilitation Center still includes a hospital which treats patients placed with the Department of Mental Health, and the additional work load is placed on the county public administrator because of the facility's existence.
We note that Marshall, Missouri is located in Saline County.
Section 630.003.5, RSMo 1986, referring to the facility located in Marshall, Missouri, states as follows:
 5. There is hereby established within the department of mental health a division of mental retardation and developmental disabilities. The director of the division shall be appointed by the director of the department. The division shall administer all state facilities under the direction and authority of the department director. The Marshall State School Hospital, the Carrollton State School Hospital, the Higginsville State School Hospital, the St. Louis State School Hospital and the regional diagnostic clinics located at Albany, Hannibal, Joplin, Kansas City, Kirksville, Poplar Bluff, Rolla, Sikeston and Springfield and other similar facilities as may be established, are transferred by type I transfer to the division of mental retardation and developmental disabilities. [Emphasis added.]
Section 633.005(4), RSMo 1986, defines a "mental retardation facility," of which the facility at Marshall is one, as:
 633.005. Definitions. — As used in this chapter, unless the context clearly requires otherwise, the following terms shall mean:
* * *
 (4) "Mental retardation facility", a private or department facility, other than a regional center, which admits persons for residential habilitation and other services and which is qualified or licensed as such by the department pursuant to chapter 630, RSMo;
* * *
Section 633.120, RSMo 1986, specifies the functions of a mental retardation facility as:
 633.120. Referral for admission to facility, when — admission or rejection, appeal — consent. — 1. A regional center may refer a client for admission to a mental retardation facility only if determined by a comprehensive evaluation that:
(1) The person is mentally retarded;
 (2) The person needs residential habilitation and other services for the protection of himself or others;
 (3) The mental retardation facility offers a program which best meets the person's needs; and
 (4) The mental retardation facility is the least restrictive environment available.
 2. The regional center shall forward its comprehensive evaluation containing the determination under subsection 1 of this section and such other records as are necessary to enable the mental retardation facility to determine whether to accept or reject the referral.
 3. The head of a private mental retardation facility may, and the head of a department mental retardation facility shall, admit the person if, as a result of reviewing the evaluation, the head of the mental retardation facility determines that the client is appropriate for admission as a resident and suitable accommodations are available. If the head of a department mental retardation facility rejects the referral, the regional center may appeal the rejection to the division director. After consulting with the head of the referring regional center and the head of the department mental retardation facility, the division director shall determine the appropriate disposition of the client.
* * *
 5. The head of a mental retardation facility shall have an individualized habilitation plan for each resident within thirty days of the resident's admission. Such plan shall include a statement regarding the resident's anticipated length of stay in the facility and the feasibility of least restrictive alternatives.
* * *
Section 630.005(15), RSMo 1986, defines "individualized habilitation plan" as:
 630.005. Definitions. — 1. As used in chapters 630, 631, 632, and 633, RSMo, unless the context clearly requires otherwise, the following terms shall mean:
* * *
 (15) "Individualized habilitation plan", a document which sets forth habilitation goals and objectives for mentally retarded or developmentally disabled residents and clients, and which details the habilitation program as required by law, rules and funding sources;
* * *
A "mental retardation facility" such as at Marshall can be contrasted with a "mental health facility" which is defined in Section 632.005(11), RSMo Supp. 1989, as:
 632.005. Definitions. — As used in chapter 631, RSMo, and this chapter, unless the context clearly requires otherwise, the following terms shall mean:
* * *
 (11) "Mental health facility", any residential facility, public or private, which can provide evaluation, treatment and, inpatient care to persons suffering from a mental disorder or mental illness and which is recognized as such by the department or any outpatient treatment program certified by the department of mental health. No correctional institution or facility, jail, regional center or mental retardation facility shall be a mental health facility within the meaning of this chapter; [Emphasis added.]
Examples of a mental health facility include the hospitals at Fulton and St. Joseph, among others.
As you noted, the term "state mental hospital" is not statutorily defined. In attempting to determine the meaning of "state mental hospital" as used in Section 473.737.2, "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the language used . . . and to consider the words used in their plain and ordinary meaning."Wolff Shoe Company v. Director of Revenue, 762 S.W.2d 29, 31
(Mo. banc 1988). The standard in determining if the language is clear and unambiguous is whether the statute's terms are plain and clear to one of ordinary intelligence. Id. at 31.
Historically, the terms "state mental hospital" and "state hospital" have referred to hospitals which are now defined as "mental health facilities." In Van Loo v. Osage County,141 S.W.2d 805 (Mo. 1940) an individual found to be of unsound mind was confined to the "state hospital" at Fulton. See also Usseryv. Haynes, 127 S.W.2d 410 (Mo. 1939). In State ex rel. Moser v.Montgomery, 186 S.W.2d 553 (K.C. Ct. App. 1945) an individual adjudged to be of unsound mind was committed to "State Hospital No. 2" at St. Joseph. The court committed to the "state hospital" at St. Joseph a juvenile found to be a dangerous person with severe mental illness. Sherrill v. Wilson,653 S.W.2d 661 (Mo. banc 1983). State v. Montague, 510 S.W.2d 776
(Mo.App. 1974) concerned an individual found not guilty by reason of insanity and committed to the "state mental hospital" in Fulton. In Foote v. State, 650 S.W.2d 28 (Mo.App. 1983) the patient sought release from the "state mental hospital" in Fulton pursuant to Section 552.040, RSMo Supp. 1980.
Conversely, the term "state school" has been used to identify a mental retardation facility. See Missouri Attorney General Opinion No. 25, Duval, January 16, 1961 (Children committed to a State Training School for mentally retarded children by the juvenile court shall be accepted by said school subject to availability of suitable accommodation at the school.) and Opinion No. 62, Mitchell, May 10, 1954 (involving the child of a woman inmate at the "state school" at Marshall).
We conclude the term "state mental hospital" as used in subsection 2 of Section 473.737 does not include a "mental retardation facility" such as that at Marshall. The term "state mental hospital" has historically not been applied to a facility such as at Marshall and the definition of "mental health facility" in Section 632.005(11) specifically excludes a "mental retardation facility." Therefore, the Saline County Public Administrator is not eligible to employ a secretary under subsection 2 of Section 473.737, RSMo Supp. 1989.
CONCLUSION
It is the opinion of this office that the Saline County Public Administrator is not eligible to employ a secretary under the provisions of subsection 2 of Section 473.737, RSMo Supp. 1989.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General